Joseph J. Siprut*
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel: (312) 236-0000
Fax: (312) 878-1342

Todd C. Atkins (CASB 208879)
*tatkins@siprut.com*
**SIPRUT PC**
2261 Rutherford Road
Carlsbad, California 92008
Tel: (619) 665-3476

Nick Suciu III**
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, Michigan 48201
Tel: (313) 303-3472

* Admitted Pro Hac Vice

** Pro Hac Vice application to be submitted

Counsel for Plaintiff DURANCE DABISH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURANCE DABISH, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>BRAND NEW ENERGY, LLC,<br><br>                              Defendant. | Case No.  3:16-cv-0400-BAS-NLS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Cynthia Bashant<br>Complaint Filed: February 16, 2016<br><br>JURY TRIAL DEMANDED |

Plaintiff DURANCE DABISH, individually and on behalf of a class of persons similarly situated, brings this action against BRAND NEW ENERGY, LLC ("BNE" or "Defendant") for its illegal sale of dietary supplements adulterated with Picamilon[1], AMP Citrate and/or Selective Androgen Receptor Modulators ("SARMs"). Plaintiff states and alleges as follows upon information and belief, based upon, *inter alia*, investigations conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff personally, which are alleged upon knowledge. Plaintiff invokes this Court's jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## INTRODUCTION

1.  This is a civil class action brought individually by Plaintiff and on behalf of all persons in the United States and the State of California (the "Classes"), who purchased the dietary supplements Brand New Energy Oxy Elite, Hard Rock Supplements Yellow Bullet AMP, Hard Rock Supplements Yellow Bullet, EPG Extreme Performance Group Turnt Up, Hard Rock Supplements ECA Elite, EPG Extreme Performance Group Ostalean, EPG Extreme Performance Group Ostagenin Max and EPG Extreme Performance Group Ostashred (collectively, the "Products") distributed and manufactured by BNE.

## PARTIES

2.  During the class period commencing four years before the date of this filing, class members in California and throughout the United States purchased the Products through numerous brick and mortar and online retail stores. Plaintiff and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

3.  Plaintiff Durance Dabish is a resident of the County of San Diego, State of California, and purchased the Brand New Energy Oxy Elite Product from the website, www.illpumpyouup.com, for his own use during the four years preceding the filing of this Complaint.

---

[1] Picamilon is also known as nicotinoyl-GABA, pycamilon, picamilone, pikatropin, and pikamilon.

4. Brand New Energy, LLC is licensed in the State of California and headquartered at 3424 West Magnolia Boulevard, Burbank, California 91505.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class members exceed $5,000,000 and because Defendant is a citizen of a different state from the members of the Classes.

6. This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

7. Venue is proper in this District pursuant to: (a) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (b) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

8. Americans spend tens of billions of dollars a year on trying to keep in shape, including gym memberships, diets and dietary supplements.

9. The combined market for meal replacement and diet pills was an estimated $3.04 billion dollars in 2014.[2]

10. In such a competitive business environment, Defendant makes an effort to differentiate its Products by including illegal ingredients to entice consumers to choose the Products over its competitors.

11. Defendant designed, manufactured, warranted, advertised and sold the Products throughout the United States, including in the State of California, and continues to do so.

12. This action arises from Defendant's failure, despite its knowledge that the Products are dangerous and not fit for dietary purposes, to disclose and/or warn Plaintiff and other consumers. Indeed, Defendant has undertaken to conceal vital information concerning the risks of the Products.

---

[2] *See* http://www.prweb.com/releases/2011/5/prweb8393658.htm (last visited Mar. 24, 2016).

3

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

13. Defendant knew or should have known that Plaintiff and Class members would suffer damages as the result of purchasing and/or using the Products. Defendant's failure to disclose the dangers with the Products about which it knew or should have known constitutes unfair, unlawful, fraudulent, and deceptive business practices.

14. This is not the first time Defendant has gone down the road of including illegal substances in its products. On April 13, 2015, the Food and Drug Administration ("FDA") published a warning to consumers to avoid the dietary supplement EPG Tri-Methyl Extreme, distributed by Defendant, because it contained anabolic steroids.[3] Defendant has had a history and continues to base its business model on offering products, which contain illegal ingredients, to unsuspecting consumers.

15. Plaintiff and other Class members have been damaged by Defendant's concealment and non-disclosure of the dangerous nature of the Products and were misled into purchasing the Products. Notwithstanding its knowledge, and complaint it has received concerning dangers associated with the Products, Defendant has failed and/or refused to provide an adequate remedy. As a result of Defendant's practices, Plaintiff and the other Class members have suffered injury in fact, including economic damages.

16. The difference between the products Defendant expressly and/or implicitly purports to deliver, and the Products actually delivered, is significant.

**PICAMILON**

17. Picamilon is a potentially dangerous ingredient that does not meet the legal definition of a dietary ingredient and may not be lawfully used in dietary supplements. Picamilon is a synthetic chemical designed to cross the blood-brain barrier and is a prescription drug used in some countries, but not the United States, to treat various neurological conditions.

---

[3] *See* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm442494.htm (Last visited Mar. 24, 2016).

18.   Picamilon was developed by researchers in the former Soviet Union and is currently a prescription drug in Russia used to treat a variety of neurological conditions. It has never been approved as a prescription or over-the-counter drug in the United States.

19.   Picamilon is a neurotransmitter (gamma-aminobutyric acid or GABA) that has been synthetically modified in order to facilitate its translocation across the blood-brain barrier. Picamilon is formed by synthetically combining nicotinic acid (niacin) with GABA. There is no indication in the literature that this compound is found in nature.

20.   A "dietary ingredient" under section 201(ff)(1) of the United States Federal Food, Drug and Cosmetic Act ("FDCA") is "(A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)." 21 U.S.C. § 321(ff)(1).

21.   Picamilon does not fit any of the dietary ingredient categories in section 201(ff)(1)(A) – (F) of the FDCA. Thus, Picamilon is not a lawful dietary ingredient, and products that contain Picamilon are not lawful dietary supplements and may not be lawfully sold in the United States. Under the FDCA, products that contain Picamilon, like Defendant's Products, are deemed to be adulterated.

22.   Defendant's Products that contain Picamilon are Brand New Energy Oxy Elite, Hard Rock Supplements Yellow Bullet AMP, Hard Rock Supplements Yellow Bullet, and Hard Rock Supplements ECA Elite.

**AMP CITRATE/DMBA**

23.   Defendant adds the powerful and illegal stimulant MethylPentane Citrate, or more commonly known as AMP Citrate or DMBA, to the Products.

24.   As a manufacturer and distributor of the Products, Defendant has an affirmative duty to comply with the FDCA, 21 U.S.C. § 301, *et seq.*, as well as any parallel state statute.

25. Defendant received a Warning Letter from the FDA on April 24, 2015, concerning AMP Citrate contained within its Hard Rock Supplements Yellow Bullet AMP Product, and explaining the illegality of the ingredient.[4]

26. In 1994, the Dietary Supplement Health and Education Act (the "DSHEA") was passed into law, establishing a new framework governing the composition, safety, labeling, manufacturing, and marketing of dietary supplements.

27. Dietary supplements are defined by the FDCA as a "product (other than tobacco) intended to supplement the diet" that contains one or more of the following: (1) vitamins; (2) minerals; (3) and herb or other botanical; (4) an amino acid; (5) a supplement meant to increase total dietary intake; (6) a concentrate, metabolite, constituent, extract, or combination of any of the listed ingredient. 21 U.S.C. § 321(ff)(1).

28. Under the DSHEA, dietary ingredients that were marketed in the United States before 1994 may be used in dietary supplements without notifying the FDA.

29. The stimulant DMBA was not marketed in the United States before 1994 and thus does not qualify for this exemption.

30. Notice of "new" dietary ingredients (*i.e.*, those not used in the United States before 1994) must be submitted to the FDA unless the ingredient has been "present in the food supply as an article used for food without being chemically altered." 21 U.S.C. § 350b(a)(1).

31. For dietary ingredients not used in the United States prior to 1994, the manufacturer or distributor, at least 75 days before the introduction of a new dietary ingredient ("NDI") into the market, must provide the FDA with information that demonstrates that the "history of use or other evidence of safety establish that the NDI when used under the conditions recommended or suggested in the labeling of the NDI will reasonably be expected to be safe." 21 U.S.C. § 350b(a)(2).

---

[4] *See* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm444412.htm (last visited Mar. 24, 2016).

32. After receiving information regarding an NDI, the FDA may then determine that the manufacturer or distributor has not provided an adequate basis to conclude that the NDI is reasonably expected to be safe, which would prevent the marketing of such NDI.

33. The Defendant did not provide the FDA with the required NDI notification for AMP Citrate/DMBA.

34. Dietary supplements that contain undisclosed NDIs are considered adulterated for purposes of the FDCA.

35. Defendant was fully aware that DMBA was an NDI, but nevertheless included it in its Products.

36. Defendant's Products that contain AMP Citrate/DMBA are Hard Rock Supplements Yellow Bullet AMP and EPG Extreme Performance Group Turnt Up.

**SARMs**

37. Defendant's EPG Extreme Performance Group Ostalean, EPG Extreme Performance Group Ostagenin Max and EPG Extreme Performance Group Ostashred (the "SARM Products") are marketed as being natural supplements, when, in fact, they contain an illegal unapproved new drug known as Ostarine, or (2S)-3-(4-cyanophenoxy)-N-[4-cyano-3-(trifluoromethyl)phenyl]-2-hydroxy-2-methylpropanamide. Ostarine is a selective androgen receptor modulator for which substantial clinical investigations have been instituted and made public with regard to treatment of cancer cachexia, or muscle wasting.

38. Defendant's SARM Products are androgenic modulator products and unapproved new drugs sold in violation of sections 505(a) and 301(d) of the FDCA, 21 U.S.C. §§ 355(a) and 331(d), and are misbranded drugs sold in violation of sections 502 and 301(a), 21 U.S.C. §§ 352 and 331(a).

39. Defendant's SARM Products are not dietary supplements. According to section 201(ff)(3)(B)(i) of the FDCA, 21 U.S.C. § 321 (ff)(3)(B)(i), a dietary supplement may not include an

article that is approved as a new drug under section 505 of the FDCA, 21 U.S.C. § 355(a), unless that article was marketed as a dietary supplement or food prior to FDA approval of such drug. Further, pursuant to section 201(ff)(3)(B)(ii) of the FDCA, 21 U.S.C. § 321 (ff)(3)(B)(ii), a dietary supplement also may not include an article authorized for investigation as a new drug for which substantial clinical investigations have been instituted and made public, unless the article was marketed as a dietary supplement or food before its authorization as a new drug.

40. Ostarine was not marketed as a dietary supplement or as a food until after it was under substantial clinical investigation. Therefore, Defendant's SARM Products, which contain Ostarine, are also excluded from the definition of a dietary supplement under section 201(ff)(3)(B)(ii) of the FDCA, 21 U.S.C. § 321 (ff)(3)(B)(ii).

41. Defendant's SARM Products are also classified as "new drugs," as defined by section 201(p) of the FDCA, 21 U.S.C. § 321(p), because these Products are not generally recognized among experts as safe and effective for use under the conditions prescribed, recommended, or suggested in their labeling.

42. Furthermore, Defendant's SARM Products are prescription drugs, as defined in section 503(b)(1)(A) of the FDCA, 21 U.S.C. § 353(b)(1)(A), because due to their toxicity or potentiality for harmful effect, the method of their use, or the collateral measures necessary for their use, they are not safe for use except under the supervision of a practitioner licensed by law to administer them. Defendant's SARM Products are also prescription drugs because they contain a selective androgen receptor modulator, Ostarine, and present significant potential safety risks to consumers who take them without the supervision of a practitioner licensed by law to administer such drugs.

43. Under sections 301(d) and 505(a) of the FDCA, 21 U.S.C. §§ 331(d) and 355(a), a new drug may not be introduced or delivered for introduction into interstate commerce unless an FDA approved application is in effect for it.

44. No approved applications are in effect for Defendant's SARM Products.

45. Consequently, Defendant's marketing and sale of these Products without such approved applications violates these provisions of the FDCA.

46. According to section 502(f)(1) of the FDCA, 21 U.S.C. § 352(f)(1), a drug is misbranded if, among other things, it fails to bear adequate directions for its intended use(s).

47. "Adequate directions for use" means directions under which a layman can use a drug safely and for the purposes for which it is intended. 21 C.F.R. § 201.5.

48. Prescription drugs can be used safely only at the direction, and under the supervision of a licensed practitioner, and, thus, it is impossible to write "adequate directions for use" for prescription drugs.

49. FDA-approved prescription drugs which bear the FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. 21 C.F.R. §§ 201.100(c)(2) and 201.115.

50. Therefore, because there are no FDA-approved applications for Defendant's SARM Products, the Products' labeling fails to bear adequate directions for their intended use, causing them to be misbranded under section 502(f)(1) of the FDCA, 21 U.S.C. § 352(f)(1).

51. Defendant's SARM Products are misbranded for all of the aforementioned reasons. The introduction or delivery for introduction into interstate commerce of these misbranded drug products violates section 301(a) of the FDCA, 21 U.S.C. § 331(a).

52. Plaintiff and Class members were deceived into purchasing Products which they believed to be legal dietary supplements, but instead received products containing illegal ingredients.

53. The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

54. Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

55. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

56. Plaintiff and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action individually and as a representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of a National Class and California Subclass. The Classes are defined as follows:

> **National Class:** All persons in the United States who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.
>
> **California Subclass:** All persons in the State of California who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case, any member of the judge's immediate family, and the courtroom staff.

58. The Classes are so numerous that joinder of all members is impracticable. On information and belief, the Classes have more than 10,000 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

59. There are numerous questions of law and fact common to Plaintiff and members of the

10
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Classes. These common questions of law and fact include, but are not limited to, the following:

    a.    The legality of the ingredients Picamilon, AMP Citrate/DMBA, and Ostarine;

    b.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.    Whether Defendant's actions violate California's law against unfair and deceptive acts or practices, Business and Professions Code § 17200, *et seq.*;

    d.    Whether Defendant's actions violate California's law against false advertising, Business and Professions Code § 17500, *et seq.*; and

    e.    Whether Defendant's actions violate California's Consumer Legal Protection Act, Civil Code § 1750, *et seq*.

60. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

61. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience and complex and class action litigation, including consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Classes.

62. Defendant has engaged in a common course of conduct toward Plaintiff and members of the Classes. The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

63. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is necessary to compel Defendant to keep such adulterated and

misbranded products out of the market and to compensate those who have been misled into purchasing the Products. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because Defendant acted or failed to act on grounds generally applicable to the Classes. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

64. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class wide basis.

**FIRST CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the National and California Subclass Members)**

65. Plaintiff incorporates paragraphs 1 through 64 as if fully set forth herein.

66. Plaintiff and each member of the Classes are a "Consumer" as that term is defined by Cal. Civ. Code § 1761(d).

67. The Products are a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

68. Defendant is a "Person" as defined by Cal. Civ. Code § 1761(c).

69. The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

70. Plaintiff and members of the Classes are Consumers who purchased the Products for personal use within the applicable statute of limitations period.

71. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered

injury-in-fact and has lost money or property as a result of Defendant's actions as set forth herein.

72. Plaintiff and Class members purchased the Products in reliance on Defendant's labeling and marketing claims.

73. Defendant knew or should have known that their representations of fact are material and likely to mislead consumers.

74. Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Classes would not have purchased the Products had they known the true nature of the illegal ingredients in the Products.

75. Plaintiff and members of the Classes have been directly and proximately damaged by Defendant's actions.

76. In conjunction with filing this Complaint, Plaintiff's counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code § 1782(a). Should Defendant fail to respond within thirty days, Plaintiff will amend to seek damages under the Consumer Legal Remedies Act.

77. Defendant has engaged in, and continues to engage in, business practices in violation of the Consumer Legal Remedies Act, Civ. Code § 1750, *et seq*., by continuing to make false and misleading representations on their labeling of its Products.

78. These business practices are misleading and/or likely to mislead Consumers and should be enjoined.

**SECOND CAUSE OF ACTION**
**Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500,** *et seq.*
**(On Behalf of the National and California Subclass Members)**

79. Plaintiff incorporates paragraphs 1 through 64 as if fully set forth herein.

80. Plaintiff and the Classes have standing to pursue a cause of action for false advertising

under Bus. & Prof. Code § 17500, *et seq*., because Plaintiff and members of the Classes have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

81. Defendant advertised, marketed, and otherwise disseminated misleading information to the public through the Products' labels.

82. Defendant continues to disseminate such statements.

83. Defendant's statements are misleading.

84. Defendant knows that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

85. Plaintiff and Class members relied on Defendant's marketing and labeling.

86. Defendant's actions violate Cal. Bus. & Prof. Code § 17500, *et seq*.

87. As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to, money from Plaintiff and Class members who paid for the Products. Therefore, Defendant has been unjustly enriched.

88. Plaintiff and Class members seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535.

89. Plaintiff and Class members seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

**THIRD CAUSE OF ACTION**
**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the National and California Subclass Members)**

90. Plaintiff incorporates paragraphs 1 through 64 as if fully set forth herein.

91. Plaintiff and the Classes have standing to pursue a cause of action for false advertising under Bus & Prof. Code § 17200, *et seq*., because Plaintiff and members of the Classes have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

92. Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, in that Defendant has engaged in deceptive business practices by illegally selling the Products.

93. Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, in that Defendant has engaged in unlawful, unfair and deceptive business practices by violating California's Sherman Food Drug & Cosmetic Act and California's Consumer Legal Remedies Act.

94. Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, on the additional grounds that Defendant has failed to properly label its Products in accordance with 21 C.F.R. § 101, *et seq*.

95. Defendant's actions also constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, in that Defendant has made unfair, deceptive, untrue or misleading statements in advertising mediums, including its Products' labels, in violation of Bus. & Prof. Code § 17500.

96. Defendant's actions have caused economic injury to Plaintiff and Class members. Plaintiff and Class members would not have purchased the Products had they known the true nature of the Products.

97. Pursuant to Bus. & Prof. Code § 17203, Plaintiff and Class members seek an injunction enjoining Defendant from continuing to market, advertise, and sell the Products without first complying with federal and state law and to prevent Defendant from continuing to engage in unfair competition or any other act prohibited by law.

98. Plaintiff and Class members also seek an order requiring Defendant to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members as permitted by Bus. & Prof. Code § 17203.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

A. Certification of the proposed National Class;

B. Certification of the proposed California Subclass;

C. Appointment of Plaintiff as class representative;

D. Appointment of the undersigned counsel as counsel for the Classes;

E. A declaration that Defendant's actions complained of herein violate the State of California consumer protection statutes;

F. An order enjoining Defendant from engaging in the unlawful conduct set forth herein;

G. An order compelling Defendant to conduct corrective advertising;

H. An award to Plaintiff and the Classes of attorneys' fees, as allowed by law and/or equity;

I. Leave to amend this Complaint to conform to the evidence presented at trial; and

J. Orders granting such other and further relief as the Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable

Dated: March 24, 2016

Respectfully submitted,
/s/ Todd C. Atkins
Todd C. Atkins (CASB 208879)
*tatkins@siprut.com*
**SIPRUT PC**
2261 Rutherford Road
Carlsbad, California 92008
Tel: (619) 665-3476

Counsel for Plaintiff,
Durance Dabish

16
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **First Amended Class Action Complaint** was filed this 24th day of March 2016 via the electronic filing system of the United States District Court for the Southern District of California, which will automatically serve all counsel of record.

*/s/ Todd C. Atkins*