# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURANCE DABISH, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>BRAND NEW ENERGY, LLC,<br><br>　　　　　　　　　Defendant. | Case No. 16-cv-400-BAS(NLS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 7]** |

　　　　Plaintiff Durance Dabish filed this complaint alleging violations of the California Consumer Legal Remedies Act, the California False Advertising Law, and the California Unfair Competition Law. The class action is based upon Defendant Brand New Energy, LLC's alleged mislabeling, false advertising, and unlawful sale of various dietary supplement products. Defendant moves to dismiss, arguing: (1) Plaintiff lacks standing to sue regarding the products that he did not purchase; (2) the primary jurisdiction doctrine bars this Court from deciding Plaintiff's claims since they fall under the purview of the Food and Drug Administration ("FDA"); and (3) the complaint fails to satisfy the specificity standard under Federal Rule of Civil

Procedure 9(b) for claims alleging fraud. Plaintiff opposes.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

I.   BACKGROUND[1]

Plaintiff brings this suit individually and on behalf of a class claiming Defendant illegally sold dietary supplements including Brand New Energy Oxy Elite, Hard Rock Supplements Yellow Bullet AMP, Hard Rock Supplements Yellow Bullet, EPG Extreme Performance Group Turnt Up, Hard Rock Supplements ECA Elite, EPG Extreme Performance Group Ostalen, EPG Extreme Performance Group Ostagenis Max, and EPG Extreme Performance Group Ostashred. (FAC ¶ 1.) Plaintiff alleges he purchased the first of these products, Brand New Energy Oxy Elite. (FAC ¶ 3.)

"Plaintiff and class members were deceived into purchasing [these eight] Products which they believed to be legal dietary supplements but instead received products containing illegal ingredients." (FAC ¶ 52.) "Plaintiff and class members would not have purchased the Products or would not have paid as much for the Products had they known the truth." (FAC ¶ 56.)

Four of the products—Brand New Energy Oxy Elite, Hard Rock Supplements Yellow Bullet AMP, Hard Rock Supplement Yellow Bullet and Hard Rock Supplements ECA Elite—are adulterated with Picamilon. (FAC ¶ 22.) "Picamilon is a synthetic chemical designed to cross the blood-brain barrier and is a prescription drug used in some countries, but not the United States to treat various neurological conditions." (FAC ¶ 17.) Picamillon is "not a lawful dietary ingredient" and

---

[1] All facts are taken from the First Amended Complaint ("FAC"). *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) ("All allegations of material fact [from the complaint] are taken as true and construed in light most favorable to the nonmoving party.").

1  "products that contain Picamilon . . . may not be lawfully sold in the United States."
2  (FAC ¶ 21.) Picamilon does not meet the legal definition of a dietary ingredient and
3  may not be lawfully used in dietary supplements. (FAC ¶ 17.)
4        Two of the products—Hard Rock Supplements Yellow Bullet AMP and EPG
5  Extreme Performance Group Turnt Up—are adulterated with AMP Citrate.[2] (FAC ¶
6  35.) AMP Citrate is a "powerful and illegal stimulant." (FAC ¶¶ 23, 25.) AMP Citrate
7  was added to the Products without the required notification to the FDA to determine
8  its safety. (FAC ¶¶ 25-35.)
9        Three of the products—EPG Extreme Performance Group Ostalean, EPG
10 Extreme Performance Group Ostagenin Max, and EPG Extreme Performance Group
11 Ostashred—are adulterated with a Selective Androgen Receptor Modulator
12 ("SARM"). (FAC ¶ 37.) These "SARM products" "are marketed as being natural
13 supplements when, in fact, they contain an illegal unapproved new drug known as
14 Ostarine." (FAC ¶ 37.) The SARM products are not dietary supplements because
15 they contain Ostarine. (FAC ¶¶ 39-40.)

17 **II.    LEGAL STANDARD**
18       A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
19 Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R.
20 Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must
21 accept all factual allegations pleaded in the complaint as true and must construe them
22 and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill*
23 *v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule
24 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather,
25 it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

---

[2] Plaintiff first alleges that "the Products" (earlier defined as all eight products) are adulterated with AMP Citrate (FAC ¶¶ 23, 25), but then later limits the AMP Citrate products to the above two products.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.   DISCUSSION

### A.   Standing

To establish standing under the Constitution, plaintiff must show: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In the context of a class action, standing is established if "at least one named plaintiff meets the requirements." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

Defendant argues Plaintiff lacks standing to bring claims on behalf of the class for any product he did not purchase. Plaintiff alleges only that he purchased Brand New Energy Oxy Elite. (FAC ¶ 3.)

Courts have reached different conclusions on when a named plaintiff in a class action may represent a class of individuals who brought similar but not identical products. *See generally Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012). Some courts only permit a named plaintiff to represent a class for products he or she actually purchased and find a plaintiff lacks standing for products he or she did not specifically purchase. *See, e.g., Allen v. Hylands, Inc.*, No. CV 12-1150-DMG (MANx), 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012); *Johns v. Bayer Corp.*, No. 09-cv-1935 DMS (JMA), 2012 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (Sabraw, J.). "The majority of courts that have carefully analyzed the question, [however], hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Dorfman v. Nutramax Labs., Inc.*, No. 13-cv-873 WQH (RBB), 2013 WL 5353043, at *6 (S.D. Cal. Sept. 23, 2013) (quoting *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). In these latter cases, the courts have found that analyzing the issue of standing, when there are similarities between the products, is better accomplished under Rule 23 at the time of class certification. *See, e.g., Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) (citing *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 529-32 (C.D. Cal. 2011)).

This Court agrees with the latter line of cases. In this case, Plaintiff alleges Defendant misbranded a series of products as dietary supplements when they were not. Although at the class-certification stage, the fact that Plaintiff purchased only one of these products and that the eight products had different adulterants may cause difficulty, the Court finds the allegations at this stage of the proceedings are sufficient to establish standing.

//

//

//

### B. Particularity Under Rule 9(b)

Defendant next argues that Plaintiff fails to allege sufficient particularity under Rule 9(b) because he fails to allege: (1) how and when he consumed the supplement; (2) what advertising or labels he reviewed; (3) that he did not experience advertised benefits; and (4) facts demonstrating that any representations were false.

When a claim is based on fraud or mistake, the circumstances surrounding the fraud or mistake must be alleged with particularity. Fed. R. Civ. P. 9(b). If the allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1087, 1107 (9th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with an explanation of the statement and why it was false or misleading. *See id.* at 1107. The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotation marks omitted); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001)).

In this case, Plaintiff alleges when and where he purchased Brand New Energy Oxy Elite. (FAC ¶ 3.) Plaintiff need not allege consumption of the product. *See Hesano v. Iovate Health Sciences, Inc.*, No. 13-cv-1960-WQH-JMA, 2014 WL 197719, at *5 (S.D. Cal. Jan. 15, 2014). Nor, given the allegations, is Plaintiff required to allege that he did not experience any advertised benefits. The allegations do not pertain to allegations of benefits. The allegations pertain to mislabeling the

products.

Plaintiff alleges the products were labeled as "dietary supplements" when they were not, because they included adulterants that disqualified the product from being lawfully labelled a dietary supplement. (FAC ¶¶ 17, 25-35, 39-40.) He provides specifics outlining why labelling the products as "dietary supplements" was false. This is sufficient to meet the particularity requirements of Rule 9(b).

Finally, Plaintiff alleges he and the class members were deceived into purchasing the Products, which they believed to be legal dietary supplements, and would not have purchased the Products or would not have paid as much for the Products had they known the truth. (FAC ¶¶ 52, 56.) This is sufficient who, what, when, where and how under Rule 9(b) and gives Defendant sufficient notice of the misconduct alleged so it can defend itself against the charge.

### C.     Primary Jurisdiction

The primary-jurisdiction doctrine is a "prudential" doctrine in which courts may choose to defer the determination of a particular issue to the relevant administrative agency before allowing the cause of action to proceed. *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The doctrine may be invoked in circumstances where the plaintiff's claims implicate technical and/or policy questions "that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citing *Syntek*, 307 F.3d at 780).

When deciding whether a particular issue implicates the primary-jurisdiction doctrine, the court looks to four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in

1  administration." *Clark*, 523 F.3d at 1115 (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987). When the court finds primary jurisdiction applies, it may "stay[] proceedings or dismiss[] the case without prejudice so that the parties may seek an administrative ruling." *Id.* at 1115.

"Primary jurisdiction applies in a limited set of circumstances." *Clark*, 523 F.3d at 1114. "Competence [of the agency] alone is not sufficient. The particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *Gen. Dynamics*, 828 F.3d at 1363. The primary-jurisdiction doctrine is "not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Clark*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). The doctrine "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency" and if "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (internal quotations and citations omitted); *see also Brown*, 277 F.3d at 1172 (noting "primary jurisdiction is properly invoked when a case presents a far-reaching question that 'requires expertise or uniformity in administration'").

Furthermore, because it is a discretionary doctrine, the court may decline to invoke the doctrine when deciding the issue is not outside the ability of the court. *See Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013) (denying defendant's motion to dismiss on the ground of primary jurisdiction because defendant gave no reason why deciding the issue was outside the ability of the court and such questions are frequently determined by courts).

//

1        Defendant argues the Court should refer the questions raised in this case to the
2   Food and Drug Administration ("FDA") under the primary-jurisdiction doctrine. The
3   FDA has issued extensive regulations, including the definitions of a "dietary
4   supplement." *See* 21 U.S.C. §321(ff)(1). And the question in this case is whether
5   Defendant's labelling of its products as "dietary supplements" was false or
6   misleading. In this circumstance, the doctrine of primary jurisdiction is not
7   implicated. *See, e.g., Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124
8   (N.D. Cal. 2010) (plaintiff's assertion that the defendant has violated FDA
9   regulations and marketed a product that could have mislead a reasonable consumer
10  was not subject to the doctrine of primary jurisdiction); *Imagenetix, Inc. v. Frutarom*
11  *USA, Inc.*, No. 12-cv-2823-GPC (WME), 2013 WL 6419674, at *4 (S.D. Cal. Dec.
12  9, 2013) (allegations of mislabeling, where the FDA has already provided guidance
13  on the issue, and the court's role was to determine whether the labels were misleading
14  to the reasonable consumer, does not require FDA expertise); *Morgan*, 2013 WL
15  5514563, at *4 ("[w]hile food regulation is undoubtedly in the purview of, and an
16  area of special competence for, the FDA, [defendant] has given no reason why
17  determining whether a label is misleading is outside the ability of the Court.").

18       The FDA has already issued guidance as to what a dietary supplement is and
19  what dietary ingredients may be legally added to a dietary supplement and how. The
20  issue now presented to this Court is whether Defendant's labelling of the products
21  was accurate: whether the products were in fact legal dietary supplements as already
22  defined by the FDA, and whether the labelling of the products as such misled
23  consumers. Such a determination does not need additional FDA expertise or
24  implicate concerns about uniformity in administration. Therefore, the Court declines
25  to dismiss or stay the action under the doctrine of primary jurisdiction.
26  //
27  //
28  //

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss. (ECF No. 7.)

**IT IS SO ORDERED.**

DATED: November 23, 2016

Hon. Cynthia Bashant
United States District Judge